The Fifth Circuit, we have a full docket this week, more or less, but the first case of the morning is number 16-41218, United States v. Reyes-Contreras, but I would ask you to follow our traffic lights, where the yellow light gives you two minutes, red light tells you to stop, and also to give us record citations when possible, because we have normally not examined the entire record before argument. So, we'll hear first from Ms. Shepard. May it please the Court, Katie Shepard for Mr. Reyes-Contreras. The issue in this case is whether Missouri voluntary manslaughter categorically qualifies as a crime of violence under the 2015 edition of the Illegal Reentry Guideline. The answer to that question is no for three reasons. First, the voluntary manslaughter statute in Missouri is broader than generic murder and generic manslaughter. Second, the government hasn't shown with the requisite certainty that the statute is divisible. And third, the Missouri statute doesn't necessarily have force as an element. The Missouri statute has two subsections. The first prohibits knowingly causing another's death under the influence of sudden passion, and the second prohibits knowingly assisting the commission of a self-murder. This statute is overbroad for two main reasons. First, murder, aiding and abetting murder, and manslaughter all require some form of homicide, but the Missouri statute only requires a suicide. This court in Bonilla... Why is it only a suicide? Well... I mean, who says a voluntary manslaughter cannot include suicide? This court in Bonilla defined voluntary manslaughter as requiring homicidal intent and involuntary manslaughter as requiring recklessness toward the risk of homicide. So if you knowingly cause the death of another person... Sorry, knowingly assist another in the commission of self-murder, why is that not, you know, knowingly committing murder? Well, this court hasn't defined murder, a generic definition of murder yet, but even using the Third Circuit's definition in Marrero, murder requires causing death of another person. Yes. And the Missouri statute doesn't require causing the death of another person. It requires knowingly assisting another person to cause their own death. So it's simply the difference between a homicide versus a suicide. Well, but aid and abet would normally be considered part of the generic offense, would it not? Well, under the guidelines, the first step is to consider whether the substantive offense is a match for the generic offense, and then the court considers whether aiding and abetting that offense is categorically aiding and abetting the generic offense. And in this case, it isn't a matter of aiding and abetting murder is equivalent to knowingly assisting someone to commit suicide. There's still the problem of a homicide versus a suicide. Well, I think that's semantic technicality, but you can go on to your other arguments. That's just speaking for myself. The second reason it's overbroad is because the model penal code and the majority of states, that's 28 states, codify assisted suicide as a separate and distinct crime, and only nine states have it as a form of manslaughter. And the reason that it's a separate crime, assisting suicide as a separate crime, is because suicide isn't illegal. And, of course, had the Sentencing Commission wanted to include assisted suicide as one of the crimes that meets the crime of violence definition, it could have listed assisted suicide but did not. Turning to the divisibility argument, the government has the burden to prove with certainty that the subsections are elements, and it hasn't met that burden in this case under the three steps of Mathis. First of all, there aren't any Missouri cases that speak definitively on the means versus elements question, but there is the Pavia case, which said that the certified court documents in that case didn't indicate which subsection of conviction, whether it was the sudden passion form of manslaughter or whether it was the assisted suicide form of manslaughter. And also under the second step of Mathis, there are indications in the statute itself that suggest that the statute contains means. One of those indications is that both of the subsections carry the same penalty. Aren't you arguing inconsistently with your prior argument? Because if both of these subsections constitute means, then both of them must be classified under voluntary manslaughter. No, I think that my arguments are not inconsistent. In the first argument, I was just looking at the subsection that deals with assisted suicide. Well, I understand that, but you're saying it's just another means to commit voluntary manslaughter. Right, and it's an overbroad means of committing voluntary manslaughter. And on the record in this case, I don't think just looking at the judgment, you can't determine with certainty. If this is not divisible, it's hard for me to say what statute is divisible. Well, I think there are plenty of cases where the court has found the statutes to be divisible when there's a case, for example, from the state courts that say what the government has to prove to a jury beyond a reasonable doubt. Well, but, I mean, you've just been arguing. You have to prove that assisting another person to commit self-murder is a completely different offense from voluntary manslaughter. Well, my argument is that it's overbroad. No, you're saying it's a completely different offense. I'm not saying that. I'm trying to argue that the statute is overbroad when you consider the least culpable means of committing that statute, which is assisting suicide. And as far as the face of the statute suggesting means, as I said, both of the subsections carry the same penalties. They're both punishable as Class B felonies, and other times when Missouri classifies different degrees, they assign different penalties to the different degrees of committing the offense. The statute also doesn't provide a list of illustrative examples, and the statute doesn't self-identify as requiring certain things to be charged. And finally, turning to the third step of Mathis, the peak at the conviction documents, I'd first like to emphasize that that peak is limited to determining the elements and is still not about considering the underlying conduct. And the Supreme Court in Mathis said that the documents must speak plainly on the question of means or elements, and this Court has said that the judgment or the conviction documents must unambiguously identify the subsection of conviction. And in this case, the Court should only look at the judgment and not the indictment, because the indictment in this case charged second-degree murder, but the judgment is for the crime of voluntary manslaughter. And the government points to the Martinez-Vega case, but this Court in Bonilla said that Martinez-Vega is limited to its facts, which is when the judgment itself says that the defendant pleaded guilty to the lesser included charge contained in the indictment. And that's not the situation in this case where we have an indictment that doesn't refer to any sort of information and simply says that the charge is voluntary manslaughter first degree, which under Missouri law, there is no differentiation between degrees of voluntary manslaughter. Are you referring to the plea or the indictment? The judgment. The plea? Yes, yes, the plea and judgment. Okay. Does not reference. Let me ask you about the indictment, because the indictment says murder second degree counts count one. In violation of section 565.021.1, what is .021.1? That's the first subsection of the voluntary manslaughter statute. No, because, well, maybe our bench memo was typed wrong, but it identifies the first subsection. I'm talking about the indictment. I'm sorry. Did you say .025? No, 021. 021. Yeah. I don't have that in front of me. Well, I'm not. This isn't a trick question. Actually, I apologize, Your Honor. I believe that's the statute that establishes the first subsection of voluntary manslaughter as a lesser included offense of second degree murder or first degree murder. But I have it in my notes at counsel's table. Are there any other Shepard documents that the judge could have looked at to help determine what the charge or what the conviction was? Not that the government produced in this case. Since the guilty plea and judgment are for voluntary manslaughter and the indictment is for second degree murder, the court can't look at the indictment under this court's case law in Bonilla and Neri Hernandez and Turner. You're assuming that the plea is to a lesser offense. I'm not assuming that. I think the government assumes that in their brief, that it's to a lesser included offense. But if it were a lesser included offense, then you would look at both of them, right? Yes, I would agree with that. Why is it not a lesser included offense when the statute says it's a lesser included offense? I think the way that Missouri has set up its statutes, it can be. There's the possibility that it's a lesser included offense, but it doesn't necessarily have to be a lesser included offense. Can't we use our brains when we say something appears to be a lesser included offense? Well, I think when you look at the Missouri statute, it establishes both subsections of voluntary manslaughter as a single crime of manslaughter, and there isn't anything like in Martinez-Vega on the face of the judgment that says that the plea was to a lesser included offense. And I also pointed the court in my brief to the Ludwig case, which establishes that in Missouri, the crime of voluntary manslaughter can be charged as a standalone offense. It doesn't have to be charged as a lesser included offense. I understand that, but the whole issue here is it not, is whether he was charged with second-degree murder, he pleads to voluntary manslaughter, first degree, and is that, in effect, correlating with the fact that he bashed his brother-in-law over the head multiple times with a baseball bat, right? In other words, subsection 1 of 565.023 and so forth. Right. And that information is in the indictment, but since the judgment itself doesn't refer to the lesser included offense in the indictment like the court had before. So we have to close our eyes to the indictment, which says that he knowingly or with the purpose of causing serious physical injury caused the death of Jose Mavigal by striking him with a baseball bat. We can't look at that, but he pleads to voluntary manslaughter, first degree, which can be, under the circumstances of the indictment, nothing other than subsection 1. I think, yes, the court does have to close its eyes to the indictment. Can you tell me what's your case that's closest on point to that? Bonilla is the case and Neri Hernandez and also Turner. In Bonilla and Neri Hernandez, the indictment had charged second degree assault or second degree manslaughter, and the plea was to attempted assault or manslaughter. And then the Turner case also had a similar situation where the charge was burglary of a habitation and the plea was to burglary of a building. And in those three cases, the court did not consider the indictment, and I would urge the court to follow those cases in this case as well. In its Rule 28J letter filed late last week, the government places some reliance on the Castleman case from the Supreme Court. Can you address that? I mean, you might want to do it in rebuttal, too, if the government brings it up. Yes, my response to that would be that in Rico Mejia, this court already decided that Castleman did not overrule its precedent in Villegas Hernandez, which is that causation of bodily injury and using force are different acts. And the court in Rico Mejia said what the Castleman court said, which is that the Castleman court was dealing with the limited special context of domestic violence and the common law definition of force, which includes mere offensive touching, but under the crime of violence definition in the guidelines, it's not domestic violence, it's violence, and the force is a physical and destructive and violent force. So based on Rico Mejia, I don't think that Castleman, and this court has said that Castleman doesn't overrule that distinction between causation of bodily injury and using force. And as far as the Voisin, Howell, and Mendez and Rica's line of cases, those cases were dealing with the separate issue of mens rea and whether an intentional mens rea was required or whether mere recklessness was sufficient. But those cases didn't touch on the distinction between causation of bodily injury and using force. So is this, is it your view that this court is in conflict with the other circuits that the government referred to in terms of interpreting Castleman? Yes, it would appear that the other circuits have not taken Castleman at its word the way that this circuit did. Castleman repeatedly emphasized that its holding was limited to the domestic violence context and also expressly said that nothing in that opinion was to cast doubt on holdings relating to violent felonies in the Armed Career Criminal Act context. So I do think that those other circuits have overlooked that part of the Castleman holding and how critical the fact that the court was limited to domestic violence and also using a common law definition of force that includes any mere offensive touching. And as far as the second count of the conviction, the armed criminal action, I would point the court to the Jones case, a 2016 Missouri en banc case that held that there's sufficient proof of that crime in Missouri when the firearm boosts the defendant's confidence. And so that means that that crime also doesn't necessarily have force as an element. And there are a number of cases that the government cited dealing with menacing crimes, but all of those cases the statute required using or displaying of the weapon. But armed criminal action in Missouri requires committing any felony through the aid of a deadly weapon, and that's how the court was able to reach that conclusion in Jones. Thank you. Okay. Thank you. Ms. Hayden. With regards to whether the Missouri voluntary manslaughter statute is divisible, the government's position is that it is divisible for this reason. It is distinguishable with Turner and Bonilla and some of the other cases cited for specific reasons.  Hernandez-Borjas. And the reason being is that under the Missouri statute format, everything is specified. For example, to plead guilty to an indictment to a lesser degree offense, it has to be by statute. And by statute, the conventional second degree murder states that the lesser degree of second degree murder is voluntary manslaughter. In this particular case, the indictment alleged second degree murder. In response to your question, Judge Jones, that the statute in the indictment that you were referring to is incorporating the second degree murder. So, in other words, voluntary manslaughter, you have to prove second degree murder. What makes it voluntary manslaughter is a mitigating factor that the defense has to interject, not the government. It does not change the elements that the government has to prove. All it does is it allows the defense to come forward with a mitigating factor. If it is charged that way, the State court cases say that that is situations where the State concedes or stipulates that the defense factor is there. And they don't oppose or they don't contest it, so they allege it that way. But for the most part, that's rare. In normal cases, it's alleged as a second degree according to the case law. And even in the jury instructions, the pattern jury instructions themselves say, in the rare case, that it is charged as a voluntary manslaughter where the State does not contest the mitigating factor, then it can be charged that way. But for the most part, under Missouri law, it occurs the way it occurred here. It is alleged as a second degree murder. And in the second count, we had the armed criminal action, which was also incorporating the second degree murder, to which he also pled guilty to. So he pled guilty to count two, which incorporated second degree murder. But with regards to the judgment, when it refers to voluntary manslaughter, it is referring to the fact that there was a mitigating factor to the degree. In other words, you still have second degree murder, but the second degree murder, the degree of the offense, the degree of the punishment, is lowered because of the mitigating factor of sudden passion caused by adequate cause. Does the statute identify second? Let's see. Is there a second? Is there an independent definition of second degree murder? Yes, Your Honor, there is. And that's in a different section of the code? It is, Your Honor. Okay. 021, like you were referring to in the indictment where it incorporates the second degree murder, I think it's 565-021. That is a second degree murder offense, and it is defined as knowingly causing the death of another individual. Okay. And that was incorporated in the indictment. So the only difference between that and 023 is that 023 has the subsection 2 allowing the defendant to inject sudden passion? Yes, Your Honor. In response to that 2, the state statute, jury instructions, case law all handle the 2 separately. In fact, the government could not find any recent case law under this statute that has actually applied subsection 2 aiding suicide in any case law. All the government found was the subsection 1 where it applied the voluntary manslaughter under the traditional generic definition where a murder is committed but there's the sudden passion caused by adequate cause. So the pattern jury instructions that are referenced in the government's brief and I believe in the 28J letter always, they state specifically in the pattern jury instructions that this instruction only applies to subdivision 1. It does not apply to subdivision 2. The government could not find an instruction that applied to subdivision 2, nor could it find any cases where they applied subdivision 2. But in response to what was mentioned earlier, I think the opposing counsel, the defense is saying that aiding and abetting suicide is a separate crime and it can't be treated under the generic murder or voluntary manslaughter. But at the same time, they're arguing that it isn't separate. So you can't have it both ways. But with regards to the state, they do handle it separately. In fact, with the second degree murder, when they're going into the degrees and they say that the lesser degree of second degree is voluntary manslaughter, it only states subdivision 1 to the exclusion of subdivision 2. So this business about voluntary manslaughter first degree you're contending is a term of art. Your Honor, I believe that the first degree that's stated in the judgment, voluntary manslaughter under the statute doesn't refer to it as first degree. And so I don't know if that was just a typo. I don't know why they refer to it under the involuntary manslaughter. They do have degrees. But for voluntary manslaughter, they do not. I don't think that that impacts what occurred here. Now, the district court below did cite to the provision that I'm referring to, 565.025, which talks about the lesser degree. So the court would have had to have looked at the second degree murder, which he was indicted for, and then would have seen that under 565.025 that the only provision of voluntary manslaughter that could have applied here would have been subdivision 1 because subdivision 2 is not a lesser degree of second degree murder. It could not be. So it could not even be considered. So that's why Hernandez-Borjas is similar to this case in that they said under the Texas statute, it was a whole different provision, but they said there was no other – it went to the degree of the penalty. There was no different elements involved. And here there's no different elements that the state had to prove either. And secondly, under the statutory provisions and the documents, there's no confusion as to what he could have been convicted of. It's clear that he was convicted of the elements of second degree murder with the mitigating factors of sudden passion caused by adequate cause. And so in looking at Hernandez-Borjas, they made similar analysis, and they said you can look at the indictment, even if the indictment states a first degree burglary and the judgment refers to a second degree, that the only difference between the two were not the elements but really the degree of the penalty and that the way that the statutes provide, you know, the elements, that it was clear from the statutes themselves. And I would submit that in this case it's clear from the statutes themselves as to what he was charged with and what he was convicted of. And if you look at the subdivision one, it fits the generic definition of voluntary manslaughter. It's the typical classic example of voluntary manslaughter, intentionally or knowingly causing the death of another person but having the mitigating factor of acting under sudden passion caused by adequate cause. But even if we looked at the whole statute and didn't apply the modified categorical approach, the government's position is that it categorically would apply in that assisted suicide is a form of homicide. Going all the way back to common law, it has always been viewed as aiding and abetting murder. Whether all the other different states apply it like that, it is criminalized by a majority of the states as a form of homicide, whether it's classified as manslaughter, whether it's classified under another provision. And also in leading up to what Judge Smith mentioned earlier about the Castleman, the alternative argument, whether not only is it an enumerated crime of violence but whether it's a crime of violence that has the use of force as an element, the government would submit that it does. And with regards to Castleman and Voisin and every other circuit that has applied Castleman have now applied it outside of the context of domestic violence cases. I know in Rico Mejia it appears to limit the application of Castleman to domestic violence cases. However, Rico Mejia could be construed narrowly in that it appears to focus on the degree of injury, which Castleman focused on with regards to domestic violence cases. In other words, in Castleman, the Supreme Court held that it recognized that under Johnson and violent felonies, crimes of violence, that the degree of injury had to go beyond offensive touching or something that didn't result in bodily injury and pain. Leading back to Johnson, which Justice Scalia stated in a concurring opinion in Castleman, stated it is consistent with these cases where as long as bodily injury, pain occurs. So Castleman, with regards to the degree of injury, did limit it to misdemeanor domestic violence cases. But with regards to what is use of force in the language that they discuss with regards to even Johnson, that is a whole separate argument, and that is not limited to the domestic violence cases. But under our rule of orderliness, we would have to make a good faith distinction with Rico Mejia, right? Yes, Your Honor. That's kind of hard to do, it seems to me. Unless we looked at also the earlier cases. I mean, it sort of appears result-oriented, it seems to me, if we want to just discard Rico Mejia and what it said. Unless we looked at Howell and Mendez Henriquez, which both applied Castleman and Voisine, mostly Voisine with regards to recklessness, but still recognize that Castleman is not limited and Voisine is not limited to domestic violence cases. And really, it is also consistent with Johnson. When Johnson described what is physical force, it's by and through concrete bodies as opposed to emotional or intellectual force. And all Castleman did was construe Johnson and said, yes, indirect force, which could be caused by, and they used as an example a firearm. And they said even a firearm is indirect force because by pulling the trigger, you're not actually punching or shoving or hitting someone, you're pulling the trigger of a gun. So the trigger isn't hitting the person, it's the bullet that you haven't, you're indirectly causing to hit the individual. So they used other examples, which really was applying Johnson. So we go back to Johnson and we say, this is still consistent. And Castleman said there's no way to cause physical bodily injury without using force. Scalia, in his concurring opinion also, agreed with that. And then it's continued on. In fact, all of the circuits other than the Fifth Circuit and Rico Mejia have concluded that Castleman, the language in Castleman in construing Johnson is correct and that no longer can they rely on their prior precedent. At least two circuits have now changed their former precedent, the first and the fourth, I believe. Let me ask you a question, though. Okay. Rico Mejia was decided on June 1, 2017, on remand from the Supreme Court. So why couldn't the government have briefed all this back at that time? Your Honor, I believe it was in our hearing. I mean, it briefs Castleman, but had the other circuits' case law been decided by that time? Yes, Your Honor. We did cite the cases that had been decided at that time, but there have been several that have been decided since. Our brief, I believe, was filed in March 9th or March 11th, early March. The cases in the 28J letter were all decided after the briefing. So there's been a lot of case law since the briefs were filed. No, so I'm saying since Rico Mejia. Since June? Yes. Yes, Your Honor. With regards to the 28J letter, we could have maybe submitted the other circuits. There have been some that have been decided within the last month or two as well, since August, August through October. But there has been a lot of activity. And so far, all of the circuits other than the Fifth Circuit have concluded that Castleman is not limited to domestic violence cases, that it also applies to violent felonies, crimes of violence under 4B1.1 or under 2L1.2. So this case would pose that issue, would it not? Yes, Your Honor. It can be decided on the enumerated offense the government submits, but it also is a crime of violence because it uses physical force, causing the death of another individual. And in addition to this, you also have, even though it wasn't argued below by the government, but the court can affirm on any ground, is the armed criminal action, which is really, it subsumes the second-degree murder plus the use of a deadly weapon or deadly instrument. So you have that as well. You do have the problem that Missouri has construed that a little differently, saying that assist and aid is broader than use. You would look at it in the context of the statute that is the underlying felony. And I believe you're right. There was a case that was viewing it in a property context, felony burglary of a habitation, where it was used in connection with the property itself. In this situation, the government, the state would have had to approve second-degree murder because under Missouri law, to prove a— I'm just talking about the armed criminal action provision. It subsumes the second degree, so they would have had to prove up the second degree as the felony. Under state law, it says you have to prove the underlying felony as an element. So to prove up second-degree murder, it could not have been directed towards property. It was directed towards an individual because second-degree murder is knowingly causing the death of another person, and then using or either through the aid or assistance of a deadly weapon. That's what I'm saying. I understood that Missouri had a definitive case, which she referred to, that said that assist and aid could mean brandishing. But you're saying that under these circumstances, you'd have to prove that the felony involved more than aid and assistance. Is that what you're saying? I think what I was trying to say, Your Honor, is that in the case, I think it was Jones, I believe, the case that she's referring to, it was in the context of a burglary. Right. And so in this case, so you'd have to look at the whole elements, not just taken out of isolation. And so in this case, we'd be looking at the second-degree murder coupled with the use or aid of a deadly weapon in the course of the second degree. Yeah, but the whole point is the overbreadth issue, right? I believe, though, if it's directed towards a person, there is a case out of this circuit, Dominguez, that said displaying in the course of threatening or causing bodily injury, you don't necessarily even have to use it, but displaying a deadly weapon in the course of causing bodily injury was sufficient to establish the use of physical force. So in this case, we would have someone using a dangerous, in the indictment it said dangerous instrument. In this case, it was a bat, and the way that it was used was reasonably capable of causing a death, and it indeed did cause the death of another individual. Right. So there's several. Other than the indictment, are there other Shepard documents that could have been used by the court to help it figure out what he was pleading guilty to? Your Honor, if there were like a plea colloquy, if that was available, sometimes it is, sometimes it isn't, depending on whether the state keeps those records. But, you know, like a rearrangement or plea colloquy transcript would have been something that could have been considered. But, I mean, we don't have anything like that in this case. We did not have that in this case. The judge didn't have an option to look at other documents. The only thing they had was the indictment. And the judgment. And the judgment, yeah. Yes, Your Honor. So the government would rest on its briefs and just state that there are several alternative ways to support what the court did in this case. As I read your brief, if I understand it, correct me if I'm wrong, you don't see anything in Calderon-Pena as a barrier to your position here. I mean, there was a lot of argument back and forth about Calderon-Pena in the briefs. Is it still good law? Has it been abrogated in part? I mean, what do we do with that in-bank decision? I believe, Your Honor, that Castleman has abrogated it. To the extent that Calderon-Pena states that causing bodily injury, and then it's – There was subsequent cases as well that – the name escapes me – but that specifically stated causing bodily injury, relying on Calderon-Pena, and stating, was it Villegas that stated that causing bodily injury in the assault context, Texas assault, just plain assault, could not require use of physical force because causing bodily injury involves indirect force, and therefore it doesn't have the active use of force. So to the extent that that is derived from Calderon-Pena in later cases, yes. The government's position is that Castleman has abrogated that. And I believe, like, the other circuits have taken that. Well, one other thing, because all the penalties have changed for what's crime of violence and so on, how much traction does this case have following the reduction in – you know, the change in the penalty schedule? And, Your Honor, the court did consider that. And at sentencing, they asked her to consider the 2016 guidelines where it would be attainable. Well, I know she refused to do it. That's fine. But what I'm saying is, as an issue of law, does this decision affect many cases going forward in the criminal or the immigration context? I think it does. And, you know, because of the Amendment 201.2, we were thinking, oh, maybe we won't have as many of these crimes of violence cases. But we do because we have 4B1.1 and 4B1.2 that apply the same use of force definition. So in the context of those provisions, we're still going to be seeing these arguments. The commission didn't change those? The commission did not change those. Okay. So those are the career criminal provisions? Yes, Your Honor. Oh, my goodness. Yep. We're still going to be seeing this. All right. Well, so is my ignorance. Thank you, Your Honor. Okay. Thank you. All right. Ms. Shepard. May it please the Court? Your Honor, in response to the government's 28J letter about the jury instructions and the government's comments about Missouri not prosecuting assisted suicide, I did a little more research and did find a newspaper article in the Columbia Daily Tribune from 2009 that charged a man with voluntary manslaughter and armed criminal action. I don't think she said they don't charge it. She said there is only one way in which you charge, not necessarily one way, but it is perfectly consistent with Missouri law to charge this Subsection I voluntary manslaughter as a lesser included of second-degree murder. Yes, and I would agree that is one possible way that the charge and plea could happen under Missouri, but I don't think that's necessarily what happened in this case. And with the Hernandez-Borhoff, or that the judgment doesn't prove that's what happened in this case, with the Hernandez-Borhoff case that the government cited, in that case, the judgment itself said that the defendant was charged with burglary of a habitation, a lesser included offense. So just like in Martinez-Vega, we had the judgment telling us that it was a lesser included offense, unlike this case. So we have nothing in this case that indicates that this is a lesser included offense of the indictment? I don't think there's enough in this case because the judgment itself doesn't say that it's a lesser included offense. And then when you look at the statute, it could be a lesser included offense, but it could not be a lesser included offense. And that's according to the judgment. And with the two cases that the government – You don't think first degree is basically another way of saying Subsection I? I don't think that's true. And the government agreed that it's possible that first degree is just a typo because that isn't a statute in Missouri. There's first degree murder. It says Class B felony, and the only involuntary manslaughter that can be a Class B felony is Subsection I. That is incorrect, Your Honor. A Class B felony in Missouri can be either Subsection I or Subsection II. The statute provides for the same penalty for both the sudden passion homicide and assisting suicide. They're both Class B penalties under Missouri law. In this case that I found recently, this person was arrested for voluntary manslaughter and armed criminal action, and the issue was a suicide pact, and the friend of the defendant had shot himself in the head, and the defendant had provided the weapon. And in that case, it was charged as voluntary manslaughter and armed criminal action, and that was from 2009. Also, as far as the common law versus the model penal code and homicide versus suicide, originally a lot of states did follow the common law, and under the common law, suicide was illegal, but now the model penal code and the generic contemporary definition of these crimes is that suicide is not illegal and assisted suicide is a separate crime. And as far as the armed criminal action, the government points to cases where the firearm had to be used or the firearm had to be displayed, but under Missouri law, armed criminal action is simply aiding. The firearm has to aid the commission of the felony, and that includes simply boosting the defendant's confidence, and that's enough for that to be a conviction. You said there's a Fifth Circuit case that says that brandishing, in that sense, can be part of a crime of violence. Yes, I think if it's brandishing or displaying or using, then it could be, but in this case, aiding is the minimum that the statute requires, and under the Jones decision, that includes boosting the defendant's confidence, and that is not using force. So I would agree that if it's as much as using or brandishing or displaying a firearm and creating fear in another person because they see a weapon or something that looks like a weapon, then that could have force as an element, but that's not the minimum conduct under the Missouri statute. What do you do with Ms. Hayden's response to my question? She says that Castleman abrogates Calderon-Pena. I mean, I would love to see Calderon-Pena abrogated because it's a completely irrational decision, but I thought it was generally recognized as being fully enforced in our circuit. What did Castleman do to that? I think Castleman left Calderon-Pena. The holding as far as causation of injury and using force, it didn't change that holding, and I think this court already recognized that in Rico Mejia and rejected the government's arguments about Castleman. And in Rico Mejia, the court said in a published decision that this court's distinction in Villegas-Fernandez or Calderon-Pena or Vargas-Duran between the causing of bodily injury and using force survives Castleman, and I do think this court is bound to follow Rico Mejia. Well, it wouldn't be the first time we've gone on bonk over a recent sentencing decision. I'm losing my pen here. Sorry. It looks like I'm out of time if there are no further questions. All right. Thank you very much.